IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MILLERS MUTUAL FIRE INSURANCE
COMPANY,

      Plaintiff,

vs.                                                                                          No. CIV 99-1325 MV

JOSEPH A. MONTOYA and
MARGARET M. MONTOYA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, filed May 2, 2000 [Doc. No. 12], and Defendant's Response to Plaintiff's Motion for Summary Judgment, filed May 2, 2000 [Doc. No. 14]. The Court, having considered the motions, responses, relevant law, and being otherwise fully advised, finds that Plaintiff's motion for summary judgment is not well-taken and will be **DENIED**. The Court, having considered the motions, responses, relevant law, and being otherwise fully advised, finds that Defendants' Response, in which Defendants request that this Court hold that Millers does have a duty to defend the Montoyas in the underlying action filed against them by Ms. Rapalee, is well taken, and the Court therefore rules that Millers has a duty to defend the Montoyas in the underlying action brought by Ms. Rapalee. Summary judgment is granted in favor of the Defendants on the issue of whether Millers has a duty to defend the Montoyas in the underlying action. The Court does not address whether Millers must indemnify the Montoyas until the conclusion of the underlying action, as it has no information before it on the outcome of the underlying action in state court.

1



## BACKGROUND

This is an action brought by Millers Mutual Fire Insurance Company ("Millers") seeking a declaratory judgment that it does not have a duty to defend or indemnify Defendants Joseph and Margaret Montoya ("the Montoyas") in the underlying action brought by Cheré Rapalee against the Montoyas. Because only the issue of whether Millers has a duty to defend the Montoyas is ripe at this time, the Court reserves judgment on Millers duty to indemnify until the close of the underlying proceedings. Because the determination whether Millers has a duty to defend the Montoyas depends on the relevant insurance policy and the allegations in the underlying action, *see Lopez v. N.M. Public Schools Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994), the Court must review both. For purposes of resolving these motions, following are the undisputed material facts.[1]

Millers issued and renewed a Homeowners' Insurance Policy to the Montoyas with an effective date of May 28, 1986, and with subsequent renewals for all times materials to this action. The Homeowner's Policy which Millers issued to the Montoyas is a standard policy which covers "'bodily injury' caused by an 'occurrence.'" *Homeowners' Policy Coverage Form* at § II, Coverage E (hereinafter referred to as "Homeowners' Policy"). An "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *Id.* at Definitions, ¶ 5. "Bodily injury" is defined as "bodily injury, sickness or disease, including care, loss of services and death resulting therefrom." *Id.* at Definitions, ¶ 1. The

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

policy excludes from coverage "bodily injury or property damage arising out of any sexual act, including, but not limited to molestation, incest or rape." *Id.* at § II (1)(b).

On August 26, 1999, Cheré Rapalee filed suit against Joseph and Margaret Montoya, and Freddie Montoya, their son, in the Twelfth Judicial District, County of Otero, Cause No. CV 99-398. According to the complaint in the primary action[2], Ms. Rapalee claims that during her childhood, Freddie Montoya had sexual contact with her on multiple occasions, possibly between 1987 and ending in 1991, some of which occurred in the Montoya's home. During the time of the occurrences, Ms. Rapalee lived with her parents and family in Tularosa. During some of the occurrences, Freddie was not a member of his parents' household and was living elsewhere. *See* Rapalee's Complaint at ¶¶ 5-7.

Ms. Rapalee alleges that at the time of the occurrences, Mr. and Mrs. Montoya knew, or should have known, the risk to her if she was exposed to Freddie, and of his propensity to have sexual contact with little girls. In 1987, Freddie plead guilty to Criminal Sexual Penetration of a Minor in July, 1987 (Ms. Rapalee was not the victim of that offense). Freddie completed ten months of inpatient sex offender treatment in the State Hospital in Las Vegas, New Mexico. As part of his sentence, Freddie was to continue outpatient counseling and was supposed to live with his parents. Another condition of his probation was that he "not work or volunteer athletic activities involving children." *See* Rapalee's Complaint at ¶¶ 4, 8.

Ms. Rapalee further claimed that Mr. and Mrs. Montoya had a legal duty to her and her family because the Montoya and Rapalee families were related by marriage and were very close.

---

[2]  Hereinafter referred to as "Rapalee's Complaint."

Mr. and Mrs. Montoya were also responsible for Ms. Rapalee's welfare because they periodically cared for her. *See* Rapalee's Complaint at ¶ 9. Ms. Rapalee alleges that the negligence and fault of Mr. and Mrs. Montoya include, but are not limited to: entrusting Ms. Rapalee to Freddie; allowing Freddie to have contact with Ms. Rapalee; not keeping Freddie and Ms. Rapalee away from each other; failing to protect Ms. Rapalee from harm; making it more difficult for Ms. Rapalee to complain about what Freddie was doing to her and to protect herself from it; negligent supervision and/or control of Freddie' negligent supervision and care of Ms. Rapalee; failure to warn and apprize Ms. Rapalee and her parents of the danger; and failure to keep their property safe for Ms. Rapalee and others. *See* Rapalee's Complaint at ¶ 11.

On November 16, 1999, Millers filed the complaint in this action, seeking declaratory relief that it does not owe a duty to defend the Montoyas in the action brought by Ms. Rapalee. On May 2, 2000, Millers filed a Motion for Summary Judgment, arguing that as a matter of law, they do not owe a duty to defend or indemnify the Montoyas in the underlying action brought by Ms. Rapalee. On May 2, 2000, Defendants filed a Response to Plaintiff's Motion for Summary Judgment, asking this Court to hold that Millers does owe a duty to defend the Montoyas in Ms. Rapalee's action against them.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable

4

to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## APPLICABLE LAW

A federal court sitting in a diversity action must apply the substantive law of the state in

which it sits. *See Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115 (10th Cir. 1999). If there is no ruling by the state's highest court, then the federal court must "apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of the state." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *see also Duke v. Grady Mun. Schools*, 127 F.3d 972, 978 (10th Cir. 1997). When state law is unclear, the federal court must predict how the state's highest court would resolve the issue. *See Armijo v. Ex. Cam., Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). In doing so, the federal court should consider "decisions of other states, and the general weight and trend of authority." *Id.* at 407. New Mexico case law is not dispositive on several of the legal issues at issue in this case. However, decisions of other federal and state courts provide guidance in this area, and the Court looks to the applicable New Mexico law when available.

## ANALYSIS

At issue in this case is Millers' duty to defend the Montoyas in the underlying action.[3] The duties to defend and provide coverage are distinct. See *Foundation Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 605 (N.M. 1982) (citing *American Employers' Ins. Co. v. Continental Ins. Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)). Under New Mexico law, an insurer has a duty to defend an insured from an action if the allegations in the underlying complaint state a claim potentially covered by the insurance policy. See *Mullenix*, 642 P.2d at 605-06 ("if the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer

---

[3]     The Court does not address whether Millers has a duty to defend Freddie Montoya in the underlying Rapalee complaint. This issue was not raised by either party.

is obligated to defend, regardless of the ultimate liability of the insured") (quoting *American Employers' Ins. Co. v. Continental Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973)); *Valley Improvement Assoc., Inc. v. Ins. Co. of North America*, 129 F.3d 1108, 1115 (10th Cir. 1997); *Lopez*, 870 P.2d at 747 ("Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy"). Even if the allegations are not clear enough to determine whether the action is covered by the policy, if the alleged facts tend to show a covered occurrence, the insurer must defend the insured. *See Mullenix*, 642 P.2d at 605 (quoting *American Employers' Ins. Co.*, 512 P.2d at 676). Moreover, if the injured third party has pleaded any grounds against the insured covered by the policy, the insurer must defend the insured, even if the action includes claims not covered by the policy. *See Valley Improvement Assoc.*, 129 F.3d at 1116 (citing cases). "Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend." *State Farm Fire & Casualty Co. v. Price*, 684 P.2d 524, 528 (N.M. Ct. App.) *cert. denied*, 683 P.2d 44 (N.M. 1984), *overruled on other grounds, Ellingwood v. N.N. Investors Life Ins. Co.*, 805 P.2d 70 (N.M. 1991). "[A]ny doubt about whether the allegations are within policy coverage is resolved in the insured's favor." *Id.* (citing 14 Couch, § 51:49). Similarly, ambiguities found in the language of the insurance contract should be construed liberally in favor of the insured. *See Safeco Insurance Company of America, Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977).

In order for the court in the collateral proceeding to determine that no duty to defend exists, it must be able to say, as a matter of law, that all claims set forth in the complaint arose out of acts excluded from coverage under the policy. *See Lopez*, 870 P.2d at 748. Furthermore, when the factual allegations in the complaint are ambiguous, the court in the collateral proceeding may not

make factual findings to resolve the ambiguity, "The factual determination is not for this Court [the court in the collateral proceedings] but for the court in the primary action." *Lopez* at 749.

In order to determine if Millers is obligated to defend the Montoyas, the Court must first determine whether the primary coverage provisions of the Homeowners' Policy covered damages for the claims alleged in Rapalee's Complaint. If the primary coverage provisions cover the claims, the Court must then determine whether the policy contained any exclusions which precluded coverage.

## A. The Acts Complained of in the Rapalee Complaint Were Occurrences

The Homeowners' policy only applies if the complaint in the underlying action alleges both an "occurrence" and "bodily injury." Therefore, this Court will decide these threshold issues before deciding whether the policy exclusion applies to the allegations in Ms. Rapalee's complaint. An "occurrence" is defined in the policy as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *See Homeowners Policy* at ¶ 5. "Accident" is not defined by the insurance policy. As the New Mexico Supreme Court has stated, "whenever the word 'accident' is not defined in the insurance policy, 'the word must be interpreted in its usual, ordinary and popular sense.'" *Vihstadt v. Travelers Ins. Co.*, 709 P.2d 187, 188 (N.M. 1985) (quoting *Watson v. Western Casualty & Surety Co.*, 382 P.2d 723, 725 (N.M. 1963)). The New Mexico Supreme Court has defined "accident," within the terms of an accident policy, as "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.'" *Id.* (quoting *King v. Travelers Insurance Co.*, 505 P.2d 1226, 1229-30 (N.M. 1973)).

8

In this case, Millers argues that the complaint in the underlying action does not allege an "occurrence" because the claims arise out of intentional acts of sexual misconduct, and that none of the acts alleged by Ms. Rapalee involved an accidental event. However, this Court must apply the definition of "occurrence" to the actions of the Montoyas, not their son Freddie. In determining whether an insurance company has a duty to defend an insured's negligence that is related to another person's intentional misconduct, New Mexico courts have analyzed the unintentional actions separately from the intentional actions. For example, in *Sena v. Travelers Insurance Co.*, *Sena v. Travelers Insurance Co.*, 801 F. Supp. 471, 475 (D. N.M. 1992), the Court, in interpreting New Mexico law, found that Travelers did not have a duty to defend the perpetrator of a sexual assault, but acknowledged that had the victim of a sexual assault sued the wife of the perpetrator for negligence in connection with the husband's intentional acts of sexual abuse, the insurance company would have had a separate duty to defend her. The New Mexico Supreme Court has also recognized that a Court should look to allegations of negligent supervision and other similar claims separately from allegations of intentional harm. In *McKenna*, the perpetrator was seeking coverage for assault and battery. In denying coverage, the New Mexico Supreme Court distinguished the case before it from other cases that have held that insureds would be covered if they were not themselves responsible for the intentional injury but were merely charged with some form of negligent supervision. *See McKenna*, 565 P.2d at 1036 (citing *Pawtucket Mutual Insurance Company v. Lebrecht*, 190 A.2d 420, 423 (1963); *Walker v. Lumbermens Mutual Casualty Company*, 491 S.W.2d 696 (Tex. Civ. App. 1973)). This Court previously held that, even as applied to the same person, intentional acts of a person may not be entitled to coverage, but negligent acts of that person are entitled to coverage. *See State Farm Fire & Casualty Co. v. Ruiz*, 36 F. Supp.2d 1308, 1315

(D.N.M. 1999).

That this Court should consider the allegations against the Montoyas separately from those against Freddie is in keeping with the weight of authority in other jurisdictions. *See Evangelical Lutheran Church in America v. Atlantic Mutual Insurance Company*, 169 F.3d 947, 950 (5th Cir. 1999) (interpreting Illinois law) (Chaplain's intentional acts of sexual molestation were not attributable to the church who was sued for negligent hiring; therefore, insurance company had a duty to defend the church); *St. Paul Fire & Marine Insurance Co. v. Schrum*, 149 F.3d 878, 880-81 (8th Cir. 1998) (interpreting Missouri law) (claims of negligent supervision viewed separately from intentional acts of sexual molestation); *American States Ins. Co. v. Borbor*, 826 F.2d 888, 894 (9th Cir. 1987) (interpreting California law) (no coverage under insurance policy for husband who allegedly molested children at nursery school, but coverage was available for wife who did not encourage, aid, or abet husband's actions and was at most negligent for failing to investigate husband's actions); *Silverball Amusement, Inc. v. Utah Home Fire Insurance Co.*, 842 F. Supp. 1151, 1155 (W.D. Ark. 1994) (the company's negligent acts, not the perpetrator's, determine whether there is a duty to defend or provide coverage); *Lee v. Interstate Fire & Casualty Co.*, 826 F. Supp. 1156, 1164 (N.D. Ill. 1993) (interpreting Rhode Island law) (in dicta, liability of Diocese officials for failure to supervise separate from question of liability of Reverend accused of sexual molestation); *Diocese of Winona v. Interstate Fire & Casualty Co.*, 858 F. Supp. 1407, 1415-16 (D. Minn. 1994) ("A refusal to treat the employer's negligent supervision as separate from the employee's intentional conduct is an unduly restrictive interpretation of policies like those involved in this case"); *Capital Alliance Insurance Co. v. Thorough-Clean, Inc.*, 639 So.2d 1349, 1353 (Ala. 1994) (although the perpetrator, an employee, was not entitled to coverage for a rape and robbery

of a customer, the janitorial service was entitled to coverage, because the court could not find any evidence of intent to injure on the part of the service); *State Farm Fire & Casualty Co. v. Elizabeth N.*, 12 Cal. Rptr.2d 327 (Ct. App. 1992) (coverage found for wife who provided child care services under homeowner's policy for allegations of negligent supervision relating to alleged sexual abuse of children by husband); *Republic Ins. Co. v. Jernigan*, 753 P.2d 229 (Colo.1988) (wife's negligent actions were covered under the homeowner's policy even though the husband had intentionally set fire to the home); *Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1057 (Fla. App. 1994) (parents who were sued  on the theory of negligent supervision were entitled to coverage, even though son's actions were intentional); *Wayne Tp. Bd. of Sch. Com'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1209 (Ind. App. 1995) (claim of sexual molestation brought against school and principal; with respect to the school district's negligent conduct, their conduct was an occurrence under the policy and the insurance company had a duty to defend the school.  Perpetrator's intent could not be imputed to the school district); *Brumley v. Lee*, 963 P.2d 1224, 1228 (Kan. 1998) (coverage existed for insured's negligent acts that were related to intentional conduct of co-insured's acts); *Cambridge Mutual Fire Ins. Co. v. Perry*, 692 A.2d 1388 (Me. 1997) (insurance company obligated to defend wife against claim of negligent failure to protect her daughter from sexual violations committed by adoptive father); *Worcester Mutual Insurance Co. v. Marnell*, 496 N.E.2d 158 (Mass. 1986) (parents who were sued on the theory of negligent supervision of their son were covered under a homeowner's policy even though the actions of the son were intentional); *Morgan v. Cincinnati Insurance Co.*, 307 N.W.2d 53 (Mich. 1981) (provision in standard fire policy voiding policy in event of fraud by "the insured" is to be read as having application only to insured who committed fraud and makes claim under policy and has no application to any other person described in policy as an insured);

11

*Washoe County v. Transcontinental Insurance Co.*, 878 P.2d 306, 310 (Nev. 1994) (emphasizing that it was the county's liability for negligence in the licensing process rather than the employee's liability for sexually abusing the day care children that was at issue); *Property Cas. Co. of MCA v. Conway*, 687 A.2d 729 (N.J. 1997) (insurer had duty to defend parents' vicarious liability for the intentional vandalism of a public school by their minor son; "occurrence" was ambiguous as to whose actions it applied -- an act could be viewed as intentional from the perspective of one insured but need not be expected from that of another insured -- therefore, construing ambiguities in favor of the insured, the insurer had a duty to defend the parents); *Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428 (Tenn.Ct. App. 1980) (husband was covered under policy even though wife's intentional actions were barred); *Hedtcke v. Sentry Ins. Co.*, 326 N.W.2d 727 (Wis. 1982) (a policy exclusion for an intentional act of "the insured" did not bar liability coverage to the spouse of a man who intentionally destroyed the couple's home). Some Courts have even analyzed claims of negligence and intentional acts separately when the actors are the same person. *See, e.g., Worcester Insurance Company v. Fells Acre Day School, Inc.*, 558 N.E.2d 958, 970-71 (Mass. 1990) (finding that the insurance company had no duty to defend against the allegations of assault and battery committed by the defendants, but that the insurance company had a duty to defend the same defendants against the claims of negligence and recklessness alleged in the underlying complaint); *Manufacturers and Merchants Mutual Insurance Co. v. Harvey*, 498 S.E.2d 222, 227 (S.C. Ct. App. 1998) (intentional acts of insured not covered under the policy, but allegations of negligent conduct are within the scope of coverage).

At best, it is ambiguous from whose standpoint coverage is to be determined. *See Brumley v. Lee*, 963 P.2d 1224 (Kan. 1998) (finding that ambiguity in "occurrence" definition, owing to its

12

failure to specify from whose standpoint accident determination was to be made, required that policy be construed to provide coverage for insured). New Mexico is similar to Kansas, in that any ambiguities are to be resolved in favor of coverage. *See McKenna*, 565 P.2d at 1037. Therefore, this Court finds that it must look to the Montoyas unintentional actions as alleged in Rapalee's complaint, rather than the intentional acts of their son Freddie.

Looking at the actions of the Montoyas as alleged in Rapalee's complaint, therefore, in determining whether the Rapalee complaint alleged an occurrence, the Court must assess the factual allegations rather than the legal theories asserted in determining whether the insurer has a duty to defend or provide coverage. *See Lopez*, 870 P.2d at 747. Thus, the fact that the Rapalee complaint charges the Montoyas with negligence rather than intentional acts is not dispositive that the complaint alleges "occurrences." However, claims of negligence may very appropriately be considered "occurrences" or "accidents." As the New Mexico Supreme Court has stated, the definition of "accidental ... does not negative the idea of negligence on the part of one whose physical act the occurrence follows.... Although an act is attributed solely to negligence, yet it may be an accident." *King v. Travelers Insurance Company*, 505 P.2d 1226, 1229 (N.M. 1973) (internal citations omitted). Whether or not an act is described as intentional acts is important in determining whether an act is an "occurrence" under New Mexico law. "To decide if an injury was an accident, New Mexico courts will examine the accidental or intentional quality of the precise event or act causing the injury." *Sena v. Travelers Insurance Co.*, 801 F. Supp. at 474 (citing *Sanford v. Presto Mfg. Co.*, 594 P.2d 1202, 1204 (N.M. Ct. App. 1979)).

This is just such a case where the underlying complaint alleges acts of negligence that are appropriately considered "occurrences," as defined under the Homeowners' Policy and New Mexico

13

law. Ms. Rapalee does not allege that the Montoyas knew, intended, or expected that the alleged

sexual contacts with Ms. Rapalee would occur. From the point of reference of the Montoyas, the

alleged sexual acts committed by Freddie were "unexpected," "unforeseen," and "undesigned

happening[s] or consequence[s] from either a known or an unknown cause.'" *Id.* (quoting *King v.*

*Travelers Insurance Co.*, 505 P.2d 1226, 1229-30 (N.M. 1973)). The underlying complaint alleges

that the Montoyas were negligent in entrusting Ms. Rapalee to Freddie; allowing Freddie to have

contact with Ms. Rapalee; not keeping Freddie and Ms. Rapalee away from each other; failing to

protect Ms. Rapalee from harm; making it more difficult for Ms. Rapalee to complain about what

Freddie was doing to her and to protect herself from it; negligent supervision and/or control of

Freddie' negligent supervision and care of Ms. Rapalee; failure to warn and apprize Ms. Rapalee and

her parents of the danger; and failure to keep their property safe for Ms. Rapalee and others. *See*

Rapalee's Complaint at ¶ 11. These actions are unintentional. Therefore, as against the Montoyas,

the underlying Rapalee complaint properly alleged "occurrences" within the definition of the policy.

## B.     Bodily Injury

Under the Homeowners' Policy, "bodily injury" is defined as "bodily injury, sickness or

disease, including care, loss of services and death resulting therefrom." In order to determine

whether Millers has a duty to defend the Montoyas, it is necessary to compare the factual allegations

in the complaint with the insurance policy. *See Lopez*, 870 P.2d at 747. Ms. Rapalee's complaint

alleges both physical injury; permanent disability, lost earnings and lost earning capacity; emotional

and psychological injuries; pain and discomfort; loss of quality of life; health care expenses; and

other expenses, injuries and damages. Certainly Ms. Rapalee's allegations of physical injury;

14

permanent disability, lost earnings and lost earning capacity; pain and discomfort; and health care

expenses all fall within the policy's definition of "bodily injury."  Therefore, as stated above, if the

injured third party has pleaded any grounds against the insured covered by the policy, the insurer

must defend the insured, even if the action includes claims not covered by the policy.  *See Valley*

*Improvement Assoc.*, 129 F.3d at 1116.  Additionally, Ms. Rapalee's allegations of emotional and

psychological injuries fall within the Montoyas Homeowners' Policy as well, as they are considered

a "sickness" that has manifested as a result of the abuse.  As the Court in *Servants of the Peraclette,*

*Inc. v. Great American Insurance Company*, 857 F. Supp. 822 (D.N.M. 1994) has noted,

> The effects of childhood sexual abuse, both initial and long-term, are
> varied and severe.  Adult survivors commonly exhibit signs of
> depression, anxiety, poor self-esteem and may engage in self-
> destructive behavior. Such psychological injuries may be a 'sickness'
> as defined by the policy.

*Id.* at 834 (citing Rebecca L. Thomas, <u>Adult Survivors of Childhood Sexual Abuse and Statutes of</u>

<u>Limitations:  A Call for Legislative Action</u>, 26 Wake Forest L. Rev. 1245 (1991)).  Therefore, the

Court finds that the Rapalee complaint alleges bodily injury.  Because the complaint alleges both

occurrences and bodily injury, Millers has a duty to defend the Montoyas in the underlying action.

The next issue is whether the exclusion applies to the underlying complaint.  The Court finds that

the exclusion does not apply.


**C.     The Sexual Act Exclusion Does Not Apply to the Causes of Action in the Rapalee**
**Complaint**

The Homeowners' Policy at issue in this case does not apply to "bodily injury or property

damage arising out of any sexual act, including, but not limited to molestation, incest or rape"

(hereinafter referred to as "the sexual act exclusion"). *Homeowners' Policy*, § II(1)(b). Millers asserts that Freddie's conduct plainly falls within the sexual act exclusion. However, as with determining whether the alleged acts constitute an "occurrence" within the definition of the Homeowner's Policy, this Court must look to the acts allegedly committed by the Montoyas, not Freddie. As stated above, the weight of authority indicates that an intentional or sexual act exclusion does not apply to the unintentional conduct alleged against a third party, despite that it would apply to the perpetrator. The Court will not repeat the analysis cited above, but *see supra* at 10-12. A few cases and distinguishing points are worth highlighting.

This Court has previously stated that in determining whether an intentional act exclusion applies, an insurer has a separate duty to defend an insured charged with negligence. In *Sena v. Travelers Insurance Co.*, *supra*, the victim in the underlying complaint alleged sexual abuse by her employer, the owner of a restaurant. The insurance company denied Mr. Urioste, the defendant's, demand to defend. In determining whether the insurance company had a duty to defend Mr. Urioste, the Court stated that the victim alleged that the defendant committed volitional, rather than accidental acts. *See id.*, 801 F. Supp. at 475. In dicta, the Court stated that had the victim alleged negligence against the wife of the defendant in connection with the sexual abuse by her husband, the insurance company would have incurred a separate duty to defend her. *See id.*

The Eighth Circuit's reasoning in *Schrum, supra*, is persuasive. In *Schrum*, an identical case to this one, the parents of two minor children sued the Schrums for negligently supervising their children, and that the alleged negligence was the proximate cause of the children being sexually abused by an individual who resided in the Schrums' home. The insurance company sought a declaration that the policy's sexual act exclusion precluded coverage. *See id.*, 149 F.3d at 879-80.

16

The exclusion in that case is identical to the one in this case: "Coverage E -- Personal Liability and Coverage and Coverage F -- Medical Payments to others do not apply to bodily injury or property damage: (j) arising out any sexual act, including but not limited to molestation, incest or rape." *Id.*, 149 F.3d at 880. The Eighth Circuit held that the sexual act exclusion focused on the actions of the perpetrator, and was not applicable to alleged claims of the parents' negligent supervision. "On these facts, these allegations contain separate and non-excluded causes of [the children's] injuries, apart from the [accompanying sexual act]." *Id.*, 149 F.3d at 881 (citing *Centermark Properties, Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 102-03 (Mo. Ct. App. 1995)).

The Ninth Circuit came to a similar conclusion in *Borbor*, *supra*. There, the children and their parents sued the perpetrator and his wife, who owned a nursery school, for acts associated with the perpetrator's sexual molestation of twenty-three children who attended the school. The husband's actions were barred by a California statute, California Insurance Code § 533, which read, "[a]n insurer is not liable for a loss caused by the willful act of the insured." *See Borbor*, 826 F.2d at 891. In California, § 533 is incorporated into every insurance contract and operates as an exclusionary clause within the contract. The district court found, and the Ninth Circuit upheld, that the perpetrator's intentional acts of molestation were not covered under the insurance policy. The Ninth Circuit reversed the district court as to the wife's coverage, and held that she was covered for her alleged negligent supervision of the children despite the exclusion.

The Tenth Circuit's decision in *All American Insurance Co. v. Burns*, 971 F.2d 438 (10th Cir. 1992) is not applicable to this case. In *All American*, a bus driver, hired by a church, was convicted of molesting two girls. The fathers of the girls sued the bus driver, the church and several members of the board of directors of the church. The civil complaint against the church and the board

17

members alleged that they negligently failed to investigate the bus drivers' record or background, and that they were negligent in failing to discharge the driver on learning of his misconduct. *See id.*, 971 F.2d at 440.

Applying Oklahoma law, the Court held that the policy unambiguously excluded coverage of the negligent actions of the church and its board members. However, the Tenth Circuit was construing Oklahoma law, which has resolved the issue of the innocent spouse's rights in favor of the insurer because the destroyed property was held in a tenancy by the entireties, *see, e.g., Short v. Oklahoma Farmers Union Insurance Co.*, 619 P.2d 588 (Okl. 1980).   This is not a situation involving a tenancy by the entirety, thus Oklahoma's conclusions are not applicable here. Moreover, another court disagreed with Oklahoma's conclusion, stating that such conclusions "employ[ ] the anachronistic common law concept of the unity of the husband and wife to defeat the contractual rights of a party to an insurance contract." *American Economy Ins. Co. v. Liggett*, 426 N.E.2d at 147. The Indiana Court of Appeals noted that "this line of reasoning has been subjected to extensive criticism." *Id.*, 426 N.E.2d at 147-48 (citing Note, "Spouse's Fraud as a Bar to Insurance Recovery," 21 Wm. & Mary L.Rev. 543 (1979)).

Millers states that the sexual acts exclusion plainly excludes Ms. Rapalee's cause of action against the Montoyas from coverage, and cites *Lopez* as support. However, *Lopez* does not resolve the matter, for the exclusion at issue in this case is very different from the exclusion in *Lopez*. "Under New Mexico law the obligation of the liability insurer is contractual and is to determined by the terms of the policy." *McKenna*, 565 P.2d at 1037 (citing cases).   Therefore, the terms of the policy at issue in this case control.

In *Lopez*, an elementary school student, "M.B.," was allegedly sexually molested by Jose

18

Madrid, a special education teacher. M.B.'s parents sued the School District for negligence in hiring, retaining and supervising of Madrid, and for failure to provide an education for M.B., an individual with disabilities. The New Mexico Supreme Court found that the "Sexual Misconduct Exclusion" in the School District's insurance policy precluded coverage of M.B.'s negligent hiring, retaining, and supervising claims.

The exclusion in *Lopez* provided, "Sexual or physical abuse or molestation of any person by ... any employee of the Assured ... does not constitute personal injury within the terms of this policy and as such any claim arising, directly or indirectly, from the aforementioned is excluded." *Lopez*, 870 P.2d at 747. This policy exclusion is very broad. Importantly, the exclusion specifically denied coverage for *any* claim, even one arising *indirectly* from sexual abuse or molestation, if it was committed by an employee of the Assured. This would clearly cover any claims of negligence that led to sexual molestation. Accordingly, the New Mexico Supreme Court found that the policy was not ambiguous and that it specifically excluded coverage for the claims alleged in the M.B. complaint. *See id.*

The exclusion in *Lopez* applied precisely to the claims in the underlying complaint. In contrast, Millers' exclusion addresses the conduct of the perpetrator only -- the sexual acts. It does not address all claims, direct or indirect. Nor does it address the actions of the Montoyas as supervisors or caretakers. These are crucial differences. Contrary to Millers' contention that the exclusion at issue in this case is more "sweeping" than the exclusion in *Lopez*, the exclusion in this case is decidedly narrow. This Court would have to read language into the policy that simply is not there to find that Millers does not have a duty to defend the Montoyas. This the Court cannot do.

Millers asserts that because the Court in *Lopez* found that the claims of negligence "arose out

19

of" the sexual misconduct, the claims against the Montoyas in this case "arose out of" Freddie's misconduct, and should therefore be barred by the exclusion. However, the Court in *Lopez* was interpreting an exclusion that specifically stated that all *claims, even ones that are indirect,* arising from sexual abuse or molestation will be barred. This is not what the exclusion in this case states. The "arising from" language in this exclusion modifies the injury, not the claim. Therefore, a plain reading of the sexual act exclusion in this case is that any injury that Ms. Rapalee suffered as a result of Freddie's alleged sexual contact with her would be barred (i.e. emotional distress and psychological injury). Looking at the language of the exclusion in this case, there is simply no basis for concluding that the claims against the Montoyas are barred because of Freddie's actions.

Plaintiff also cites *Northwest G.F. Mutual Ins. Co. v. Norgard*, 518 N.W.2d 179 (N.D. 1994) for support that the claims against the Montoyas are barred by Freddie's actions. However, *Norgard* involved an exclusion similar to the one in *Lopez*, not this case. The exclusion was broadly worded to exclude:

> bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person *by or at the direction of an insured, an insured's employee or any other person involved in any capacity in the day care enterprise.*

*Id.*, 518 N.W.2d at 180 (emphasis added). The Court found that the exclusion in a home day-care insurance policy precluded coverage for a day-care operator, who was charged with negligent supervision of a child, who was sexually abused by her husband, a named insured. Because of the terms of the exclusion, the husband's acts of sexual molestation barred coverage for anyone potentially covered under the policy, regardless of the claims against them. *Id.*, 518 N.W.2d at 184. The claims against the wife were specifically excluded from coverage by the policy exclusion. The

20

Court found that the day care operator's negligence "arose out of" the sexual acts committed by her husband, an employee. *See id*, 518 N.W.2d at 184. But this was in the context of a specifically worded exclusion that barred coverage for all claims based on an employee's acts of sexual misconduct. This is simply not the exclusion in the Homeowners' Policy in this case. The Court noted that had the husband been a stranger to the day care center, had he not been someone specifically mentioned in the exclusion, his acts would not be imputed to the day care operator to bar coverage. The Court therefore based its holding upon the particular wording of the exclusion at issue in that case, as applied to the facts as pleaded in the complaint before it. This Court must do the same. Therefore, neither *Norgard* nor *Lopez* is applicable to this case.

This Court finds that the sexual act exclusion does not apply to the Montoyas' actions as alleged in the underlying complaint. Millers must therefore defend the Montoyas in the underlying actions.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment **[Doc. No. 12]** is hereby **denied**. The Court further finds that as a matter of law, Millers has a duty to defend the Montoyas in the underlying action, and grants summary judgment in favor of the Defendants.

**DATED** this 9th day of November, 2000.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

<u>Attorney for Plaintiff:</u>
Daniel W. Lewis

<u>Attorney for Defendants:</u>
Michael W. Lilley